UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
VINICIO VALVERDE,                                          :
                                                           :
                              Petitioner,                  :         **REPORT AND**
                                                           :         **RECOMMENDATION**
               - against -                                 :
                                                           :         06 Civ. 5042(KMK)(PED)
ROBERT ERCOLE, Superintendent,                             :
Green Haven Correctional Facility,                         :
                                                           :
                              Respondent.                  :
                                                           :
------------------------------------------------------------x

  TO: THE HONORABLE KENNETH M. KARAS
     UNITED STATES DISTRICT JUDGE

  Vinicio Valverde, currently confined at Wende Correctional Facility and proceeding *pro se*, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254, setting forth four separate grounds for relief. On July 20, 1999, Valverde was convicted after a jury trial in County Court of the County of Rockland, State of New York, of Murder in the Second Degree. He was sentenced to an indeterminate prison term of from twenty-five years to life. For the reasons stated below, the petition should be denied.[1]

**BACKGROUND**[2]

  A Rockland County grand jury charged petitioner with one count of Murder in the Second Degree. Prior to trial, Petitioner moved to suppress: 1) statements he made to the police;

---

[1] This matter was referred to the Honorable Mark D. Fox, United States Magistrate Judge (retired), by order dated July 24, 2006. (D.E. 3). Following Judge Fox's retirement, the order of reference was transferred to the undersigned on January 12, 2009. (D.E. 15).

[2] Because I hereinafter conclude that the only claim petitioner has properly exhausted for review by this Court relates to the trial court's denial of petitioner's pretrial motion to suppress, I here provide only a brief summary of the evidence presented at trial.

and 2) physical evidence gathered from his residence. On April 28 and 29, 1999, a *Dunaway/Huntley/Mapp* hearing was held before the Honorable William K. Nelson, who served as the trial judge. Both parties submitted post-hearing memoranda of law, and the court, in a written decision dated May 25, 1999, denied petitioner's motion to suppress in its entirety. On May 26, 1999, petitioner proceeded to trial before Judge Nelson.

In brief, the evidence showed as follows. On June 13, 1998, the body of Beatrice Alvarez was found in a drainage creek in Spring Valley, New York. Her remains were burned and mutilated, and both hands had been severed. An autopsy report was prepared by the Rockland County Office of the Medical Examiner indicated that Alvarez died from a massive skull fracture originating from a hole on the left side of the skull. High levels of a drug called doxylamine which accelerated her death.

The body remained unidentified for one month. In early July, 1998, Ms. Alvarez' friend John Gordon recognized her from a composite sketch the police had published in a local newspaper. Gordon gave police a photograph of Petitioner, whom he knew as Ms. Alvarez' boyfriend, and told them where Petitioner and Ms. Alvarez had lived.

On July 10, 1998, Detective Reginald Anderson and Police Officer David Lebron went to Petitioner's apartment and spoke to him. The officers observed a shrine containing candles, photographs of the victim, and religious cards and symbols, and Petitioner agreed to accompany the officers to the police station for questioning. Petitioner told the police that he met Ms. Alvarez in May and that she moved in with him. He also stated that Ms. Alvarez had left him in the first week of June for an unknown male.

The officers told Petitioner that Ms. Alvarez was dead and showed him a photograph of her body. Petitioner displayed no reaction. Petitioner told the police that he had created the

shrine in his room because he prayed for Ms. Alvarez to return to him. During the course of the interview, the police obtained Petitioner's written consent to search his home and car. During this consensual search, officers observed what looked like blood stains on a mattress, and they recovered a sledgehammer, an axe, and a knife.

Police subsequently obtained a search warrant for Petitioner's apartment. Traces of blood were found on the walls as well as evidence that blood had been cleaned from the floor. A further search disclosed a severed hand which had been concealed in the ceiling of a closet. Genetic testing revealed that the mummified hand matched the body recovered from the drainage creek, as did tissue found on the sledgehammer, axe, and knife recovered from Petitioner's home.

John Gordon testified that Valverde was Ms. Alvarez' boyfriend, and that he believed she and the petitioner had been living together earlier in the summer. Another friend of Ms. Alvarez, Paola Valcarel, testified that she had observed the couple arguing because Ms. Alvarez would not marry petitioner. She also testified that she believed Ms. Alvarez was attempting to flee from petitioner and planned to buy a ticket to Puerto Rico.

Petitioner did not testify on his own behalf or present witnesses in his defense. After the state rested, and again at the conclusion of trial, defense counsel moved for a directed verdict. The trial court denied both motions, and the case went to the jury. On June 14, 1999, the jury found Petitioner guilty of Murder in the Second Degree, N.Y. Penal L. § 125.25(1). On July 20, 1999, Petitioner was sentenced to twenty-five years to life.

**PROCEDURAL HISTORY**

On direct appeal to the New York State Appellate Division, Second Department, petitioner raised five issues: (1) denial of his motion to suppress his statements as involuntary;

(2) sufficiency of the evidence; (3) failure to charge the lesser included offense of attempted murder; (4) alleged improper remarks made by the prosecutor during his summation; and (5) excessive sentence. See Brief for Defendant-Appellant Vinicio Valverde (annexed to Respondent's Affirmation In Opposition as Exhibits E and F). The Appellate Division unanimously affirmed petitioner's conviction in a Decision and Order dated December 27, 2004. *People v. Valverde*, 13 A.D.3d 658 (2d Dept. 2004).

Through his appellate attorney, petitioner sought leave to appeal to the New York State Court of Appeals. In his leave application, petitioner only sought review concerning the denial of his motion to suppress his statements as involuntary. See Letter of Del Atwell, Esq., to Clerk of the Court, dated February 2, 2005 (annexed to Respondent's Affirmation In Opposition as Exhibit J). On March 23, 2005, the Court of Appeals denied leave to appeal. *People v. Valverde*, 4 N.Y. 3d 836 (2005).

Petitioner thereafter initiated the present action by filing a Petition for a Writ of Habeas Corpus, dated June 14, 2006, which was received by the court's *Pro Se* office on June 27, 2006, and was docketed on June 30, 2006.[3] (D.E. 2) The petition sets forth four of the claims that were presented to the to the Appellate Division: (1) the defendant's statement should have been suppressed as involuntary; (2) the evidence was insufficient to support a conviction; (3) the trial court erred in not charging a lesser included offense; and (4) the prosecutor's summation deprived petitioner of a fair trial.[4] On January 4, 2007, Respondent filed an Affirmation in

---

[3] The one-year limitations period under the Anti-Terrorism and Effective Death Penalty of 1996, 28 U.S.C. § 2244(d) – including 90 days representing the time allowed to file a petition for certiorari even where no such petition has been filed, *see Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001) – expired on or about June 21, 2006. Applying the prison mailbox rule, *see Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001)*, the June 14, 2006 petition is timely. Respondent has raised no issue as to timeliness.

[4]The petition does not raise the excessive sentence claim. I note that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v.*

4

Opposition to the Petition, with copies of all briefs and decisions on appeal attached as exhibits thereto. (D.E. 8). The State also submitted an accompanying Memorandum of Law In Opposition to Petition For A Writ of Habeas Corpus. (D.E. 7). Petitioner expressly declined to file any brief in reply. (D.E. 18).

## DISCUSSION

Respondent contends that the petition should be denied because Petitioner procedurally defaulted on each of his claims. The state also argues that Grounds Two, Three, and Four were never presented to the New York Court of Appeals, and that Petitioner is consequently barred from raising these claims. The state further asserts that Grounds Two and Three present no federal constitutional claim. In addition, Respondent argues that the Appellate Division denied the claims set forth in Grounds One and Two on state procedural grounds which serve as an adequate and independent basis to deny the claims.

### I. Unexhausted Claims

Under 28 U.S.C. § Section 2254(b), applicants for habeas corpus relief must "exhaust[] the remedies available in the courts of the State." To satisfy the exhaustion requirement, the petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition. *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991) (claims not fairly presented to New York courts where petitioner failed to include them in letter seeking permission to appeal to the New York Court of Appeals). The exhaustion requirement, based primarily on principles of comity, is satisfied when the issue has been fairly presented in the state courts or the petitioner has otherwise given the state courts a fair opportunity to redress the federal claim. *Picard v. O'Connor*, 404 U.S. 270 (1971).

---

*Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

Petitioner did not exhaust the remedies available to him in New York courts with respect to the second, third, and fourth claims set forth in the petition. After the Appellate Division affirmed his conviction, his counsel filed an application for leave to appeal to the New York Court of Appeals. *See* Letter of Del Atwell, Esq., to Clerk of the Court, dated February 2, 2005 (annexed to Respondent's Affirmation In Opposition as Exhibit J). That application was based solely on the issue raised in Ground One of the petition: the claim that petitioner's statements were involuntary. The other three claims set forth in the habeas petition were not mentioned in the application, and thus were not "fairly presented" to the Court of Appeals. *Grey v. Hoke*, 933 F.2d at 120.

Petitioner may not now, under New York's procedural rules, raise the three unexhausted claims before the New York Court of Appeals because: 1) he has already made the one request for leave to appeal to which he is entitled, *see* N.Y. Court Rules § 500.10(a)(2005); *Grey v. Hoke*, 933 F.2d at 120; and 2) because the time for seeking leave to appeal has elapsed. *See* N.Y. Crim. Proc. Law § 460.30(1)(delayed leave application must be filed within one year). For exhaustion purposes "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state count would hold the claim procedurally barred." *Harris v. Reed*, 489 U.S. 255, 263 n. 9, (1989); *Engle v. Isaac*, 456 U.S. 107, 125-26 n.28 (1982). Petitioner no longer has "remedies available" in the New York state courts under 28 U.S.C. § 2245(b), and petitioner's claims are therefore "deemed exhausted" for purposes of habeas review. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004). [5]

---

[5] I note that your Honor has recently concluded that *Pesina v. Johnson*, 913 F.2d 53,54 (2d Cir. 1990), continues to preclude a federal court from deeming an otherwise unexhausted claim to be procedurally barred in the context of an un-appealed from denial of a motion pursuant to N.Y. Crim. Proc. L. § 440.10. *See Quintana v. McCoy*, 2006 U.S. Dist. LEXIS 7638 at *15 (S.D.N.Y. 2006)(Karas, J.). However, the Court of Appeals has never extended *Pesina* beyond the § 440.10 context, *see Rodriguez v. Conway*, 2010 U.S. Dist. LEXIS 888 at *28 n.12 (E.D.N.Y. 2010)(collecting cases), and this case is controlled by the Second Circuit's post-*Pesina* decision

6

However, petitioner's forfeiture in state court of Grounds Two through Four of his petition bars him from litigating the merits of those claims in federal habeas proceedings unless he can show cause for the procedural default *and* prejudice resulting therefrom, or that he is actually innocent. *Id.* at 184, *citing Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner has not demonstrated any cause for his default, and the failure of his counsel to raise the forfeited claims in the leave application is insufficient as a matter of law to constitute cause. *See DiGugliemo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004). No has petitioner made any showing that he is actually innocent. Accordingly, Grounds Two, Three and Four of the petition, which were not raised in the leave letter, are procedurally defaulted, and only Ground One of the petition is properly before this Court.

## II. Ground One - Voluntariness of Statements

In Ground One of the petition, petitioner asserts that his statements to police were involuntary. Unlike the other grounds set forth in the petition, this claim is exhausted because it was presented at all necessary state court levels.

### A) Evidence presented at the suppression hearing

On April 28, 1999, a pretrial hearing on Petitioner's motion to suppress was held in Rockland County Court. Petitioner did not testify or put forth evidence at the suppression hearing. The state presented physical evidence, as well as the testimony of Police Officers Lebron and Anderson of the Spring Valley Police Department, and Detective Juan Rocha of the Clarkstown Police Department.

---

in *Grey v. Hoke*.

Copies of unreported cases cited herein are being mailed to Petitioner. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Officer Lebron, who is fluent in Spanish, testified that following a brief conversation at petitioner's home on July 10, 1998, Petitioner accompanied the police to the Spring Valley Police Department though he was not under arrest at the time. T. 7, 12-18.[6] At the station, Officer Lebron advised petitioner that police were investigating the disappearance of Ms. Alvarez. T. 18-19. Officer Lebron stated that petitioner suddenly blurted out that if Alvarez had accused him of anything, he was "innocent." T. 21. At that point, Officer Lebron read petitioner his *Miranda* rights in Spanish, from a pre-printed form. T. 21-22. Petitioner was then asked orally whether he wanted a lawyer, and responded that he did not T. 22. However, Petitioner then checked the "si" box on the *Miranda* card indicating that he did want a lawyer. T. at 22. Officer Lebron again asked Petitioner whether he was requesting a lawyer, and he again said he was not. T. 23. Officer Lebron informed Petitioner that he marked the box indicating he did want a lawyer, so Petitioner crossed out his previous response and checked the box marked "no". T. 23, 26, 85-86. When he was asked whether he wanted to discuss the case with the police, Petitioner responded that he did, and he so indicated on the *Miranda* card. T. at 26.

During the interview, petitioner told police that he had nothing to hide, and that he was willing to cooperate with them fully. T. 33. At the conclusion of the interview, petitioner consented both orally and in writing to the search of both his one-room apartment and his car. T. 33, 60, 131-32.

Detective Anderson testified that during this search he observed a large red stain on the underside of the mattress that looked like blood and also saw small spots on the wall that resembled blood. T. 89, 132-133. A hatchet, sledgehammer, and hunting knife recovered from the apartment also showed bloodstains. T. 89. Police also recovered an identification card and

---

[6]References are to the transcript of the April 28, 1999 suppression hearing.

8

personal papers belonging to Ms. Alvarez as well as 189 photographs of her. T. 90-93.

In the early morning hours of July 11, 1998, Detective Juan Rocha of the Clarkstown police arrived at the Spring Valley Police Department to interview Petitioner in Spanish. T. 66-67, 94, 198. Before Detective Rocha commenced the interview, police discovered that Petitioner had open bench warrants in the Towns of Clarkstown and Ramapo on pending petit larceny charges. T. 71. Detective Rocha continued to interview Petitioner, who consented to provide samples of his hair, saliva and blood. T. 142-144. Petitioner later appeared before a local justice court in Clarkstown, where the court vacated his outstanding warrants and set bail. T. 145-146.

Meanwhile, Detective Anderson executed a search warrant to collect trace evidence inside Petitioner's apartment. T. 96-98. On July 15, 1998, he executed a second search warrant for Petitioner's residence and located Ms. Alvarez's mummified hand in a false ceiling in a closet. T. 101-103. A third search warrant authorized the seizure of the drug doxylamine, which was discovered in the victim's system and allegedly contributed to her death. T. at 104-106.

**B) Petitioner's Claims At The Trial Court and On Appeal**

At the suppression hearing, petitioner sought to suppress his statements made to police, as well as the physical evidence obtained in the search of his apartment. In a post-hearing memorandum of law, Petitioner argued that: (1) there was no probable cause for the police to take him into custody on July 10, 1998, so any and all evidence recovered as a result thereof should be inadmissible; and (2) the evidence seized pursuant to the officer's warrantless entry into petitioner's home on that evening must be suppressed because the "consent" obtained from petitioner was invalid. Defendant's Memorandum of Law (annexed to Respondent's Affirmation In Opposition as Exhibit B). Petitioner claimed that his consent was invalid because: 1) it was

the product of an improper arrest; and 2) because it was obtained under coercive circumstances. Significantly, in the trial court Petitioner did not take issue with either the lack of an interpreter (as distinguished from a bilingual police officer) or with the text of the Spanish-language *Miranda* waiver form.

By decision dated May 25, 1999, Justice Nelson denied Petitioner's motion to suppress his statements. Decision and Order dated May 25, 1999 (annexed to Respondent's Affirmation In Opposition as Exhibit D). The court held that "defendant was not in custody when he was initially asked, at his home, to accompany police officers to the police station." *Id*. at 7. The trial judge further held that Petitioner knowingly and voluntarily agreed to waive his *Miranda* rights and speak to the police, and that the *Miranda* rights were properly administered once petitioner became a suspect in the homicide. *Id.* The court found that "the totality of the evidence demonstrates beyond any doubt that defendant understood his rights and knowingly and voluntarily waived them." *Id*. at 8.

After his conviction, petitioner appealed to the Appellate Division, Second Department. Petitioner did not argue on appeal that he was arrested without probable cause, nor did he assert that the consent to search his apartment was invalid. Instead, Petitioner's argument focused on the validity of the alleged waiver of his *Miranda* rights, noting that: 1) the police failed to provide an interpreter (as distinguished from a bilingual police officer); and 2) that the Spanish-language waiver form Petitioner signed is confusing. Appellant's Brief With Attached Appendix (annexed to Respondent's Affirmation In Opposition as Exhibit E.)

The Appellate Division rejected these claims on procedural grounds:

The defendant, who is Spanish-speaking, did not preserve for appellate review his claims that he did not voluntarily waive his right to counsel and that the police officer who administered his rights in Spanish was not a reliable interpreter, as he did not raise these issues at the suppression hearing or trial[.]

10

*People v. Valverde*, 13 A.D.3d at 659. The Appellate Division went on to observe that:

> In any event, the defendant's claims are without merit. The defendant was advised of his Miranda rights in Spanish by a Spanish-speaking police officer. The defendant, on a Miranda form written in Spanish and English, first checked the line indicating "yes" in Spanish to the question asking "Do you want a lawyer?" However, when asked by the Spanish-speaking police officer if he was requesting a lawyer, the defendant said "no," and checked the line indicating "no," and crossed out and initialed his first response to that question. The defendant also signed a statement on the same form indicating that he understood all the rights set forth in that form. Moreover, the defendant indicated verbally to the Spanish-speaking police officer that he understood his rights but wished to waive them . Contrary to the defendant's contention, there was enough evidence on which the hearing court could conclude that he made statements to law enforcement officials after he knowingly and voluntarily waived his Miranda rights. Further, the record confirms that the police officer who read him his rights was fluent in Spanish and did not encounter any difficulties in communicating with the defendant.

*Id.* (internal citations omitted).

Petitioner sought leave to appeal to the New York Court of Appeals, arguing that "the claim that appellant did not voluntarily waive his right to counsel was preserved for review, because defense counsel moved to suppress statements made after the waiver." Letter of Del Atwell, Esq., to Clerk of the Court, dated February 2, 2005 (annexed to Respondent's Affirmation In Opposition as Exhibit J). He also argued that the waiver of his rights was "involuntary, because police [had] not 'scrupulously honored' the assertion of *Miranda*" rights. In a certificate dated March 23, 2005, the Court of Appeals stated that "there is no question of law which ought to be reviewed by the Court of Appeals," and denied leave to appeal. *People v. Valverde*, 4 N.Y.3d 836 (2005).

### C. Petitioner's Claim Cannot Be Reviewed

When a state court rendering a judgment clearly and expressly states that its judgment rests on a state procedural bar, federal review of the claim on *habeas corpus* is precluded on the basis of procedural default. *See Galdamez v. Keane*, 394 F.3d 68, 77 (2d Cir. 2005), *citing Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996). This is true even where the state court has

11

gone on to address the merits of a claim after stating that it fails on procedural grounds. *Galdamez*, 394 F.3d at 77. Indeed, the Second Circuit has squarely stated that when a state court states that a claim is "not preserved for appellate review" but then goes on to rule "in any event" on the merits, the claim is defaulted. *Fama v. Comm'r of Correctional Services*, 235 F.3d 804, 810 n.4 (2d Cir. 2000).

Applying these principles to the case a bar, Petitioner's involuntary waiver claim is defaulted. In dismissing Petitioner's claims on direct appeal, the Appellate Division utilized precisely the "not preserved for appellate review" but "in any event" formulation which the Second Circuit has indicated signifies a procedural default. *Id*. As was the case with respect to Petitioner's other claims, petitioner has not shown any cause for his default, not has he established that he was actually innocent. Thus, the procedural bar stands as an independent and adequate state ground for the state court judgment, precluding federal review on *habeas corpus*. *See Wainwright v. Sykes*, 433 U.S. 72 (1977).

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that this Petition be DISMISSED with prejudice.

Further, because Petitioner has not made a substantial showing of a denial of a federal right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000).

I also recommend that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from its order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

**NOTICE**

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of seventeen (17) days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: May 7, 2010
      White Plains, New York

                                    Respectfully Submitted,

                                    Paul E. Davison
                                    United States Magistrate Judge
                                    Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to:

The Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

Vinicio Valverde (99-A-5511)
Wende Correctional Facility
3040 Wende Road
Alden, New York 14004

Tina L. Guccione, Esq.
Office of the District Attorney of Rockland County
1 South Main Street, Suite 500
New City, New York 10956